

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **BRIAN J. SALCEDO and** | § | |
| **SARAH A. SALCEDO,** | § | Case No. 23-40496 |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| ALEX WHITE and | § | |
| DEBORAH WHITE, | § | |
| | § | |
| Plaintiffs | § | |
| v. | § | Adversary No. 23-04045 |
| | § | |
| BRIAN J. SALCEDO and | § | |
| SARAH A. SALCEDO | § | |
| | § | |
| Defendants | § | |

**MEMORANDUM OF DECISION REGARDING PLAINTIFFS' MOTION FOR
SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

On this date the Court considered the "Motion and Brief in Support of Summary

Judgment" (the "Motion") filed by Alex and Deborah White (the "Plaintiffs") on May 15,

2024, together with the related objection and reply.  Plaintiffs ask this Court to enter

summary judgment finding no genuine issue of material fact that a judgment debt owed

by Brian J. Salcedo (the "Defendant" or "Debtor") is nondischargeable as to both Brian J.

Salcedo and Sarah A. Salcedo (the "Defendants" or "Debtors") under the false

representations and actual fraud components of 11 U.S.C. § 523(a)(2)(A), for defalcation

while acting in a fiduciary capacity and larceny under 11 U.S.C. § 523(a)(2)(4), and for

-1-

willful and malicious injury under 11 U.S.C. § 523(a)(6).  After consideration of the

pleadings, proper summary judgment evidence, and the relevant legal authorities the

Court concludes that genuine issues of material fact remain.  For the reasons explained in

this memorandum, Plaintiffs' Motion is **DENIED**.

## I.  Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and

157(a).  This Court has authority to enter final orders in this adversary proceeding

because it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. §

157(b)(2)(A) and (I), and meets all constitutional standards for the proper exercise of full

judicial power by this Court.

## II.  Facts and Procedure[1]

Plaintiffs, Alex and Deborah White, are a married couple who live in Celina,

Texas.  They wanted a new home at Lot 10, the Hills of Lonestar Addition, Celina, Texas

75009 (together the "Property"), and decided to hire Salcedo Homes, LLC to build it for

them.  Plaintiffs, along with Mr. White's mother, Carol White, entered into a "Residential

Construction Contract" with Salcedo Homes, LLC in November, 2019, and an

amendment in January, 2020 (together the "Contract").

Defendants, Brian and Sarah Salcedo, are a married couple who live in Plano,

Texas.  Together they were the owners, managers, and officers of Salcedo Homes, LLC

---

[1] These facts are presented only as a general factual background to the legal claims asserted in
the case.  This section is not intended to resolve any disputed or contested facts.

and Salcedo Custom Homes, LLC.  These are both closely-held Texas limited liability companies.

The Contract was signed by Brian Salcedo as President of Salcedo Homes, LLC. Plaintiffs and Carol White agreed to pay Salcedo Homes, LLC $788,000.00 to construct their new home.  The Contract defined an event of default to include: "1) Builder's failure, without cause, to make payment to any material supplier, laborer, or subcontractor for which Builder has received payment from Owner or Owner's Lender."  The Contract required Salcedo Homes, LLC to pay all construction costs, except for costs because of change orders or select other circumstances.  To pay for construction, Plaintiffs obtained a construction loan secured by the Property from First United Bank & Trust Company.

Salcedo Homes, LLC began construction and started issuing draw requests for construction loan proceeds.  Eventually however, construction stopped and at least some subcontractors were not paid as required.  These subcontractors sent various demands and trapping notices, and some filed mechanic's and materialmen's liens against the Property. Subcontractors included CBG Surveying Texas, LLC, JP Silver Concrete Inc., Deford's Lumber Company Ltd., Ferguson Enterprises, Inc., Main Street Lumber Company, M&M Framing, LLC, and Duartes HVAC Services.  Plaintiffs paid a total of $106,6788.34 to satisfy these debts.

Plaintiffs allege that construction of their home was abandoned.  Defendants allege that Plaintiffs fired Salcedo Homes, LLC after delays due to the Covid-19 pandemic.  In

-3-

either case, Plaintiffs contracted with Motes Custom Homes, LLC on August 6, 2021 to complete construction.  Plaintiffs also filed Cause No. 219-05526-2021, styled *Alex White and Deborah White v. Salcedo Custom Homes, LLC; Salcedo Homes LLC; and Brian Salcedo*, in the 219th Judicial District of Collin County, Texas (the "State Court Case").  After Brian Salcedo, Salcedo Custom Homes, LLC, and Salcedo Homes, LLC failed to timely answer, the state court entered a default judgment against them on April 28, 2022.

On April 7, 2023, Defendants filed for Chapter 7 bankruptcy.  Plaintiffs then filed this adversary proceeding seeking to except their judgment debt from Defendants' discharge.

### III.  Summary Judgment Standard

A court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catlett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).  FED. R. BANKR. P. 7056 incorporates FED. R. CIV. P. 56 so as to apply to adversary proceedings.  Thus, if summary judgment is appropriate, the Court may resolve the case as a matter of law.

The moving party always bears the initial responsibility of informing the court of the basis for its motion and producing evidence which it believes demonstrates the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  The manner in

-4-

which the necessary summary judgment showing can be made depends upon which party

will bear the burden of proof at trial. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1077

n.16 (5th Cir. 1994). "A fact is material only if its resolution would affect the outcome of

the action." *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009);

*see also Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018). "All

reasonable inferences must be viewed in the light most favorable" to the nonmoving

party, and "any doubt must resolved in favor of the nonmoving party." *In re Louisiana

Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (citing *Matsushita Elec. Indus.

Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). An actual controversy of fact

exists where both parties have submitted evidence of contradictory facts.

*Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999).

Courts may accept the moving party's version of the facts as undisputed. *Alvarez

v. United Parcel Serv. Co.*, 398 F. Supp. 2d 543, 548-49 (N.D. Tex. 2005) (overruled on

other grounds); cf. *F.D.I.C. v. Foxwood Mgmt. Co., No.* 92-2434, 1994 WL 24911, at *6

(5th Cir. Jan. 14, 1994) (citing cases for the proposition that courts can accept the

contents of a conclusory affidavit as true if they are unchallenged). This comports with

the notion that courts need not hunt through the record searching for a genuine issue of

material fact. *See Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998);

*Savers Fed. Savs. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 (5th Cir. 1989). Once the

movant has met its burden, the nonmovant may not rest upon allegations in the pleadings

and still survive summary judgment. *Triple Tee Golf, Inc. v. Nike, Inc*., 485 F.3d 253, 261 (5th Cir. 2007). The court does not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). The nonmovant must evince more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the nonmoving party were to present these factual disputes at trial, they must be such that a rational fact finder might find in favor of the nonmoving party. *Id*. at 587.

## IV. Discussion

When a plaintiff seeks to except a debt from discharge granted to a debtor, the plaintiff must prove its claims by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). All exceptions to discharge under 11 U.S.C. § 523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio (Matter of Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). The Fifth Circuit, however, has ruled that there are limitations to this assumption, particularly in reference to the exceptions under 11 U.S.C. § 523 in which the debtor has allegedly committed fraud. *Tummel v. Quinlivan (In re Quinlivan)*, 434 F.3d 314, 318-319 (5th Cir. 2005). Consequently, courts must balance a debtor's "fresh start" against protecting the victims of fraud.

-6-

### A.  11 U.S.C. § 523(a)(2)(A) - Actual Fraud and False Representations

Plaintiffs' Motion seeks a nondischargeability finding under the false

representations and actual fraud components of 11 U.S.C. § 523(a)(2)(A).[2]  These are

similar yet distinct causes of action.  *RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1291

(5th Cir. 1995), *overruled on other grounds as recognized by Husky v. Ritz (Matter of*

*Ritz)*, 832 F.3d 560, 565 n.3 (5th Cir. 2016).  As such, they each require a creditor to

prove different elements.  However, even if these elements are proven, a cause of action

under section 523(a)(2)(A) fails if it concerns "a statement respecting the debtor's or an

insider's financial conditions."[3]

To obtain a judgment of nondischargeability for false representations or false

pretenses, a creditor must demonstrate that a debtor made: (1) knowing and fraudulent

falsehoods; (2) describing past or current facts; (3) that were relied upon by the other

party.  *Wright v. Minardi (In re Minardi)*, 536 B.R. 171, 187 (Bankr. E.D. Tex. 2015)

(citing *Allison v. Roberts (Matter of Allison)*, 960 F.2d 481, 483 (5th Cir. 1992)); *Auction*

*Credit Enters., LLC v. Desouza (In re Desouza)*, 659 B.R. 288, 295 (Bankr. E.D. Tex.

2024); *EBE, Inc. v. Wilhelms (In reWilhelms)*, Nos. 23-40053, 23-04023, 2025 Bankr.

---

[2] Section 523(a)(2)(A) states:

"A discharge under § 727 of this title does not discharge an individual debtor from any debt for money, property or services...to the extent obtained by false pretenses, false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial conditions."

[3] *Id.*

LEXIS 493, at *13 (Bankr. E.D. Tex. 2025).  False pretenses and false representations "both involve intentional conduct intended to create or foster a false impression." *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 389 (Bankr. E.D. Tex. 2009).  A false representation, however, "involves an express statement, while a claim of false pretenses may be premised on misleading conduct without an explicit statement." *Wright*, 536 B.R. at 187.  To succeed under section 523(a)(2)(A), the creditor must prove an intent to deceive. *Friendly Fin. Service - Eastgate v. Dorsey* (*In re Dorsey*), 505 F.3d 395, 399 (5th Cir. 2007).  A court may infer the requisite intent from a "reckless disregard for the truth or falsity of a statement combined with the sheer magnitude of the resultant misrepresentation." *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005);  *see also In re Miller*, 39 F.3d 301, 305 (11th Cir. 1994) (considering the totality of the circumstances to determine the debtor's intent).

Actual fraud under § 523(a)(2)(A) may be proven by showing: (1) the debtor made a representation; (2) the debtor knew that the representation was false at the time it was made; (3) the debtor made the representation with the intent and purpose to deceive the creditor; (4) the creditor relied on the representation;[4] and (5) the creditor sustained a loss

---

[4] To satisfy the required element of creditor reliance, Plaintiffs must prove both actual reliance and justifiable reliance which are determined by two different standards.  Actual reliance is the equivalent of causation-in-fact, which is defined as a "substantial factor in determining the course of conduct that results in . . . loss." *AT & T Universal Card Services v. Mercer (In re Mercer)*, 246 F.3d 391, 403 (5th Cir. 2001) (emphasis removed).  This level of reliance "requires little of the creditor." *Id.* In the case of loan fraud, "an issuer usually will be able to establish actual reliance by showing it would not have approved the loan in the absence of debtor's promise." *Id.* at 411.  Justifiable reliance, described as "an intermediate level of reliance," is a subjective standard that is more relaxed than the objective reasonable reliance standard.  *Field v. Mans*, 516 U.S. 59, 74 (1995).  Despite this, reasonableness is still

as the proximate result of its reliance on the representation.[5] *Selenberg v. Bates (Matter of Selenberg)*, 856 F.3d 393, 398 (5th Cir. 2017); *see also Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005); *Auction Credit Enters., LLC v. Desouza (In re Desouza)*, 659 B.R. 288, 295 (Bankr. E.D. Tex. 2024). Despite these elements of actual fraud, the Supreme Court has ruled that "[t]he term 'actual fraud' in § 523(a)(2)(A) encompasses forms of fraud, like fraudulent conveyance schemes, that can be effected without a false representation." *Husky Intern. Electronics, Inc. v. Ritz*, 578 U.S. 356, 359 (2016). Though it declined to adopt a definition of actual fraud for all times and circumstances, the Supreme Court did state that "'[a]ctual fraud' has two parts: actual and fraud." *Id.* at 360. For fraud to be actual, plaintiffs must make a showing of wrongful intent on the part of the defendant. *Id.* This intent can be inferred from circumstantial evidence. *Caspers v. Van Horne (In re Van Horne)*, 823 F.2d 1285, 1287–88 (8th Cir. 1987) (abrogated on other grounds). As with false pretenses or representations, reckless indifference to the truth can in some situations constitute a

---

a consideration however because "the greater the distance between the reliance claimed and the limits of the reasonable, the greater the doubt about reliance in fact." *Id.* at 76. The promisee is not, however, required to investigate even if an investigation would reveal the falsity of the promisor's representation unless the falsity is "readily apparent or obvious or there are 'red flags' indicating such reliance is unwarranted." *In re Hurst*, 337 B.R. 125, 133-34 (Bankr. N.D. Tex. 2005).

[5] Proximate cause is "largely a question of foreseeability." *First Nat'l Bank of Omaha v. O'Brien (In re O'Brien)*, 555 B.R. 771, 782-783 (Bankr. D. Kan. 2016). Reliance on the debtor's representation is a proximate cause of the creditor's loss "if the evidence shows that the loss was a reasonably foreseeable consequence of the plaintiff's reliance." *State of Texas v. Am. Tobacco Co.*, 14 F. Supp. 2d 956, 967 (E.D. Tex. 1997); *Auction Credit Enters., LLC v. Desouza (In re Desouza)*, 659 B.R. 288, 296 (Bankr. E.D. Tex. 2024).

sufficient showing of wrongful intent to find actual fraud.  *In re Miller*, 39 F.3d 301, 305

(11th Cir. 1994); *see also Farmers & Merchants State Bank v. Perry (In re Perry)*, 448

B.R. 219, 226 (Bankr. N.D. Ohio 2011) ("'[W]illful blindness' does not provide a defense

to an action brought under § 523(a)(2)(A) and may instead be used as a factor indicative

of fraud."); *see also Mid-South Maint., Inc. v. Burk (In re Burk)*, 583 B.R. 655, 667

(Bankr. N.D. Miss. 2018)("a debtor who recklessly disregards the truth has the requisite

wrongful intent for his actions to constitute actual fraud.").

There are circumstances where "§ 523(a)(2)(A) can extend to liability for fraud

that a debtor did not personally commit."  *Kahkeshani v. Hann (In re Hann)*, No.

22-20407, 2023 U.S. App. LEXIS 27447, at *14 (5th Cir. 2023).  The same can be true

for liability under the false pretenses or false representations components of section

523(a)(2)(A).  *Auction Credit Enters., LLC v. Desouza (In re Desouza)*, 659 B.R. 288,

298 (Bankr. E.D. Tex. 2024).  This is because a debtor may, under applicable state law,

be charged with vicarious liability for fraud warranting a finding of nondischargeability.

*Bartenwerfer v. Buckley*, 598 U.S. 69, 143 S. Ct. 665, 670, 214 L. Ed. 2d 434 (2023).

However, the rationale of *Bartenwerfer* is not unlimited and "[t]his Court [] understands

*Bartenwerfer* to require the Court to find some form of partnership or agency under state

law in order to hold Defendant responsible for the nondischargeable fraud of another

under § 523(a)(2)(A)."  *Auction Credit Enters., LLC*, 659 B.R. at 297.  This requirement

of the existence of a partnership or agency relationship under *Bartenwerfer* applies to the

-10-

first three elements of actual fraud under section 523(a)(2)(A).  *Id.* at 298.  Thus, for a

debtor to be liable for the actual fraud of another under section 523(a)(2)(A), the creditor

needs to show that the agent or partner (1) made a representation; (2) which the person

knew was false at the time it was made; and (3) which the person made with the intent

and purpose to deceive the creditor." *Id.*  This requirement similarly applies to the first

two required elements of false pretenses or false representations to require a showing that

the agent or partner (1) made knowing and fraudulent falsehoods (2) describing past or

current facts.  *Id.*  In the absence of any of these required elements, or if under state law

no partnership or agency relationship exists, then under *Bartenwerfer* a debtor is not

responsible under section 523(a)(2)(A) for the actual fraud, false representations, or false

pretenses of another.  Under Texas law, marriage alone is not sufficient to support a

finding of agency or partnership as required.  *Id.* at n.25.[6]

Plaintiffs' Motion alleges that Defendant, Brian Salcedo, made material

misrepresentations regarding (i) the financial condition of Salcedo Homes, LLC, (ii) the

status of the construction of Plaintiffs' home, and (iii) the use of Plaintiffs' funds.[7]

Plaintiffs also allege that Mr. Salcedo knew his representations were false when he made

them and that he requested draws for work he knew was incomplete or which he never

---

[6] See Tex. Fam. Code § 3.201(c) ("A spouse does not act as an agent for the other spouse solely
because of the marriage relationship.").

[7] Mot., ¶ 57, 19, ECF No. 41.

intended to complete.[8]  Defendants dispute these allegations, and argue there is no
evidence they ever knowingly made false representations, nor that the Contract was
entered into with intent not to complete construction of Plaintiffs' new home.[9]  Instead,
Defendants claim Plaintiffs' allegations are only contractual breaches resulting from
promises made during "the unknowns of the COVID shut down."[10]  The parties also
dispute whether Salcedo Custom Homes, LLC was insolvent during the relevant time.[11]
The summary judgment evidence submitted, read in the light most favorable to
Defendants, is insufficient for a finding of false representations or actual fraud under
section 523(a)(2)(A).  Because genuine issues of material fact remain under the facts
presented to the Court, a trial on the merits is warranted.

Plaintiffs' state court judgment was awarded against Salcedo Homes, LLC, Brian
Salcedo, and Salcedo Custom Homes, LLC.  Plaintiffs concede that no judgment was
obtained against Defendant, Sarah A. Salcedo, and that she did not make any false
representations to Plaintiffs.  Nevertheless, Plaintiffs argue she is liable for the alleged
false representations of Mr. Salcedo as an owner, officer, and manager of Salcedo Homes,
LLC and of Salcedo Custom Homes, LLC.[12]  Plaintiffs allege she also directly benefitted

---

[8] *Id.*

[9] Resp., ¶ 23, 9, ECF No. 45.

[10] *Id.*

[11] Resp., ¶¶ 14-15, 5-6, ECF No. 46.

[12] Mot., ¶ 62, 21-22, ECF No. 41.

from the alleged fraud committed by Salcedo Homes, LLC and Salcedo Custom Homes, LLC.[13]  Defendants oppose this arguing that unlike in *Bartenwerfer* where both debtors were found liable in state court, Plaintiffs' judgment is only against Mr. Salcedo.[14]

Plaintiffs have not shown that there is no genuine issue of material fact that Mrs. Salcedo is liable under Texas law for the judgment debt owed by Mr. Salcedo.  There has been no showing that Mrs. Salcedo was an agent or partner of Mr. Salcedo sufficient to hold her vicariously liable for his judgment liability.  The simple fact of their marriage is insufficient.  In fact, the summary judgment evidence submitted by Plaintiffs does not establish without dispute that Mrs. Salcedo owes Plaintiffs a debt at all.[15]

### B.  11 U.S.C. § 523(a)(4) - Fiduciary Duty Defalcation and Larceny

Plaintiffs' complaint alleges a cause of action under the defalcation while acting in a fiduciary capacity component of section 523(a)(4).[16]  Plaintiffs seek summary judgment

---

[13] *Id.*

[14] Resp., ¶ 24, 9-10, ECF No. 45.

[15] The Court must first consider whether a debt even exists that may be held nondischargeable. *Simmons v. Simmons (In re Simmons)*, Nos. 23-10130, 24-1006, 2025 Bankr. LEXIS 1382, at *21 (Bankr. E.D. Tex. 2025).  "A bankruptcy court cannot declare a debt nondischargeable until the creditor establishes the existence and amount of that debt." *In re Avery*, 594 B.R. 655, 661 (Bankr. S.D. Miss. 2018); *see also In re Burg*, 641 B.R. 120, 131 (Bankr. S.D. Tex. 2022).  As the Court in *Burg* explained, "debt" is a defined term meaning "liability on a claim" and "claim" is a defined term meaning a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ." *In re Burg*, 641 B.R. at 131; 11 U.S.C. §§ 101(12) and 101(5).

[16] Section 523(a)(4) excepts a debt from discharge if it was incurred "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny."  11 U.S.C. § 523(a)(4).

-13-

under both the fiduciary capacity and larceny components of section 523(a)(4).

To succeed on a claim of breach of fiduciary duty under section 523(a)(4),
Plaintiffs must first establish the existence of a fiduciary duty in accord with precedent.
*In re Bhai*, 2017 WL 6541131, at *7 (Bankr. E.D. Tex. Dec. 21, 2017).  According to the
Fifth Circuit "this discharge exception was intended to reach those debts incurred through
abuses of fiduciary positions and through active misconduct whereby a debtor has
deprived others of their property by criminal acts; both classes of conduct involve debts
arising from the debtor's acquisition or use of property that is not the debtor's." *Miller v.
J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 602 (5th Cir. 1998), cert. denied, 526
U.S. 1016 (1999) (internal quotations omitted).  Whether the actions of an individual
were taken in a fiduciary capacity as contemplated by section 523(a)(4) is determined by
federal law.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 637 F.3d 615, 620 (5th Cir. 2011).
Fifth Circuit precedent describes the scope of a fiduciary under section 523(a)(4) as
follows:

> [T]he concept of fiduciary under § 523(a)(4) is narrower than it is under
> general common law. Under § 523(a)(4), "fiduciary" is limited to instances
> involving express or technical trusts. The purported trustee's duties must,
> therefore, arise independent of any contractual obligation. The trustee's
> obligations, moreover, must have been imposed prior to, rather than by
> virtue of, any claimed misappropriation or wrong. Constructive trusts or
> trusts ex malificio thus also fall short of the requirements of § 523(a)(4).

*Texas Lottery Comm'n v. Tran (In re Tran)*, 151 F.3d 339, 342–43 (5th Cir. 1998); *see*

*also EBE, Inc. v. Wilhelms (In reWilhelms)*, Nos. 23-40053, 23-04023, 2025 Bankr.

LEXIS 493, at *20 (Bankr. E.D. Tex. 2025).  It logically follows then that "state law is

important in determining whether or not a trust obligation exists." *Gupta v. Eastern Idaho*

*Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

Plaintiffs assert the existence of a fiduciary duty under the facts of this case

pursuant to operation of the Texas Construction Trust Fund Act (the "CTFA").  Tex.

Prop. Code § 162.001, et. seq.  The CTFA is a statute designed to ensure that

subcontractors and materialmen are paid for construction work they perform, and that

funds paid by property owners for construction work do not disappear.  *In re Brown*, No.

22-20023, 2022 WL 17254467, at *4 (Bankr. E.D. Tex. Nov. 28, 2022); *see also In re*

*T.S.C. Seiber Services, L.C.*, 771 F.3d 246, 250 (5th Cir. 2014), quoting *Dealers Elec.*

*Supply Co. v. Scroggins Const. Co.*, 292 S.W.3d 650, 658 (Tex. 2009).  As recited in

*Brown,* the CTFA was described by the District Court as follows:

> The Trust Fund Act "imposes fiduciary responsibilities on
> contractors to ensure that subcontractors, mechanics and
> materialmen are paid for work completed." *In re Waterpoint Int'l*
> *LLC*, 330 F.3d 339, 345 (5th Cir. 2003); *accord Fidelity & Guar.*
> *Ins. Underwriters, Inc. v. Wells Fargo Bank, N.A.*, No. Civ. A.
> H–04–2833, 2006 WL 870683, at *9 (S.D. Tex. Mar. 31, 2006).
> This provision was "enacted to serve as a special protection for
> subcontractors and materialmen in situations where contractors or
> their assignees refused to pay the subcontractor or materialman for
> labor and materials." *In re Waterpoint Int'l LLC*, 330 F.3d at 345;
> *see McCoy v. Nelson Utils. Servs., Inc.*, 736 S.W.2d 160, 164 (Tex.
> App.—Tyler 1987, writ ref'd n.r.e.).

Accordingly, construction payments constitute trust funds under Chapter 162 of the Texas Property Code if they are "made to a contractor or subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract for the improvement of specific real property in this state."  Tex. Prop. Code Ann. § 162.001 (Vernon 1995 & Supp. 2005); *accord Argyle Mech., Inc. v. Unigus Steel, Inc.*, 156 S.W.3d 685, 687 (Tex. App.—Dallas 2005, no pet.); *Holladay v. CW & A, Inc.*, 60 S.W.3d 243, 246 (Tex. App.—Corpus Christi 2001, pet. denied).  In such a situation, the "contractor, subcontractor, or owner or an officer, director, or agent of a contractor, subcontractor, or owner, who receives trust funds or who has control or direction of trust funds" serves as trustee.  Tex. Prop. Code Ann. § 162.002 (Vernon 1995); *accord C & G, Inc. v. Jones*, 165 S.W.3d 450, 453 (Tex. App.—Dallas 2005, pet. denied); *Holladay*, 60 S.W.3d at 246.  The artisan, laborer, mechanic, contractor, subcontractor, or materialman who labors or furnishes labor or material for the construction or repair of an improvement on specific real property located in Texas is the beneficiary of any trust funds paid or received in connection with the improvement. *See* Tex. Prop. Code Ann. § 162.003 (Vernon 1995 & Supp. 2005); *accord In re Waterpoint Int'l LLC*, 330 F.3d at 345.

*Taylor Pipeline Const., Inc. v. Directional Rd. Boring, Inc.*, 438 F. Supp. 2d 696, 714–15 (E.D. Tex. 2006).  The CTFA "is a remedial statute that should be given a broad construction.'" *In re T.S.C. Seiber Services, L.C.*, 771 at 250.

Plaintiffs' argument in favor of finding fiduciary defalcation under section 523(a)(4) rests upon Defendants' alleged violation of the CTFA.  Specifically, Plaintiffs argue that because Defendants were officers and directors of Salcedo Custom Homes, LLC, Plaintiffs' contractor, they were "trustees" under the CTFA of Plaintiffs' payments to Salcedo Custom Homes, LLC.[17]  Plaintiffs further allege that as "trustees" Defendants

---

[17] Mot., ¶ 69, 23, ECF No. 41.

misapplied $156, 143.22 of construction trust funds without satisfying payment

obligations to subcontractors.[18]  Defendants dispute these allegations, and argue the funds

at issue are not trust funds under the CTFA pursuant to Tex. Prop. Code § 162.001(c).[19]

Considering the evidence submitted in the light most favorable to the non-movant,

Plaintiffs have not carried their summary judgment burden on their cause of action for

fiduciary defalcation under section 523(a)(4).  This Court has previously written:

> However,  the assessment of civil liability under Texas law for a CTFA
> violation arising from a diversion of construction trust funds from its
> intended beneficiaries is not singularly sufficient to render such debt
> nondischargeable as a defalcation while acting in a fiduciary capacity under
> § 523(a)(4) of the Bankruptcy Code. As the Fifth Circuit explained in
> *Coburn Co. of Beaumont v. Nicholas (In re Nicholas)*, 956 F.2d 110, 113
> (5th Cir. 1992), the fiduciary relationship imposed by the CTFA is
> sufficient for the purposes of nondischargeability under §523(a)(4) only if
> the beneficiary-plaintiff can demonstrate the existence of wrongful conduct
> under the Act by the trustee-contractor.  Stated differently, the Circuit in
> *Nicholas* held that the Texas construction trust fund statute "only creates a
> fiduciary duty to the extent that activity is wrongful under the statute. For
> the purposes of § 523(a)(4), a fiduciary duty only arises if there is a
> simultaneous wrongful misapplication of funds."  Thus, a creditor seeking

---

[18] Mot., ¶ 71, 24, ECF No. 41.

[19] Tex. Prop. Code § 162.001(c) states:

(c) A fee payable to a contractor is not considered trust funds if:

> (1) the contractor and property owner have entered into a written construction contract
> for the improvement of specific real property in this state before the commencement of
> construction of the improvement and the contract provides for the payment by the owner
> of the costs of construction and a reasonable fee specified in the contract payable to the
> contractor; and

> (2) the fee is earned as provided by the contract and paid to the contractor or disbursed
> from a construction account described by Section 162.006, if applicable.

-17-

to use the Texas Construction Trust Fund Act to establish
nondischargeability under the fiduciary subsection of § 523(a)(4) must not
only show that the contractor intentionally, knowingly, or with intent to
defraud diverted trust funds from its intended beneficiaries, but it
necessarily also requires that creditor to negate the existence of the statutory
affirmative defense regarding the trustee's use of the trust funds as a part of
its case-in-chief.  In statutory parlance, the creditor seeking to establish §
523(a)(4) nondischargeability in this context must prove that the diverted
funds were not used by the contractor "for actual expenses directly related
to the construction," notwithstanding the anomaly that the applicable statute
would place that evidentiary burden upon the contractor-trustee.

*Vrana v. Thornhill (In re Thornhill)*, Nos. 19-20005, 19-2001, 2019 Bankr. LEXIS 3052,

at *20-21 (Bankr. E.D. Tex. 2019).  The Court finds insufficient evidence, at minimum,

of the intent component as described under the above precedent.  Thus, a trial on the

merits is warranted.

Plaintiffs also argue the applicability of the larceny component of section

523(a)(4).  However, Plaintiffs have not pleaded a cause of action against Defendants

under this part of section 523(a)(4).[20]  "A bankruptcy court is generally confined to grant

a Plaintiff only the relief requested in the operative complaint, except where Fed. R. Civ.

P. 54(c) is applicable." *Simmons v. Simmons (In re Simmons)*, Nos. 23-10130, 24-1006,

2025 Bankr. LEXIS 1382, at *17 (Bankr. E.D. Tex. 2025).  In practice ". . .Rule 54(c)

means a bankruptcy court may grant relief not specifically requested in the operative

complaint if that relief is justified by the pleadings, the evidence presented, and granting

such relief does not prejudice the opposing party." *Id*. at *19.  Granting summary

---

[20] ECF No. 1.

-18-

judgment on a cause of action not included in the operative complaint would prejudice the opposing party, here Defendants, and thus the Court declines to do so.

### C. 11 U.S.C. § 523(a)(6) - Willful and Malicious Injury

Plaintiffs last contend their judgment debt should be excepted from discharge under section 523(a)(6).  Debts arising "from willful and malicious injury by the debtor to another entity or the property of another entity" are nondischargeable in bankruptcy.  11 U.S.C. § 523(a)(6).

For an injury to be "willful," it must be "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury."  *Kawaauhu v. Geiger*, 523 U.S. 57, 61-62 (1998).  Thus, reckless or negligent conduct by a debtor leading to an injury is insufficient.  *Id.* at 64.  This means that § 523(a)(6) "applies to 'acts done with the actual intent to cause injury,' *but excludes intentional acts that cause injury*."  *Williams v. IBEW Local 520 (In re Williams)*, 337 F.3d 504, 508 (5th Cir. 2003) (emphasis added) (quoting *Kawaauhau*, 523 U.S. at 61); *In re Smith*, 659 B.R. 500, 510 (Bankr. E.D. Tex. 2024).  Injuries covered by this exception are not limited to physical damage or destruction.  Harm to personal or property rights are also covered.  11 U.S.C. § 523(a)(6); *Cowin v. Countrywide Home Loans, Inc. (Matter of Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017).

The section 523(a)(6) exception for willful and malicious injury by a debtor requires either: (1) objective substantial certainty of injury; or (2) subjective motive to cause harm.  *See Miller v. J.D. Abrams Inc. (Matter of Miller)*, 156 F.3d 598, 606 (5th

-19-

Cir. 1998). The objective standard is met when a court finds that a debtor intentionally took action(s) that necessarily caused, or were substantially certain to cause the injury. *Rainey v. Davenport (In re Davenport)*, 353 B.R. 150, 202 (Bankr. S.D. Tex. 2006). Under the subjective test, a court must find that the debtor intended the actual injury that resulted. *Id*. The objective standard recognizes "the evidentiary reality that defendants rarely admit malicious intent." *Yu v. Lau (In re Lau)*, No. 11-40284, 2013 WL 2476359, at *7 (Bankr. E.D. Tex. May 28, 2013). Thus, a court must analyze from a reasonable person's perspective "whether the defendant's actions were substantially certain to cause harm, [and] are such that the court ought to infer that the debtor's subjective intent was to inflict a willful and malicious injury on the plaintiff." *Boyle v. Berkenbile (In re Berkenbile)*, No. 12-41969, 2014 WL 797743, at *9 (Bankr. E.D. Tex. Feb. 27, 2014) (citing *Mann Bracken, LLP v. Powers (In re Powers)*, 421 B.R. 326, 334-35 (Bankr. W.D. Tex. 2009) (citing *Berry v. Vollbracht (In re Vollbracht)*, 276 Fed. App'x. 360, 361-62 (5th Cir. 2007)). "Substantial certainty does not mean absolute certainty, but it must be something more than a high probability." *In re Jones*, 655 B.R. 884, 894 (Bankr. S.D. Tex. 2023).

This Court has previously found that a "contractual debt may be excepted from discharge if the requisite knowledge and intent is proven." *Kampfhenkel v. Sereboff (In re Sereboff)*, Nos. 21-41671, 22-04016, 2024 Bankr. LEXIS 961, at *9 (Bankr. E.D. Tex. 2024). This is because "a contractual breach may form the basis of a cause of action

under 11 U.S.C. § 523(a)(6)." *Id*. at \*10.  Fifth Circuit precedent requires a "knowing breach of a clear contractual obligation that is certain to cause injury" for a contractual breach to be sufficient as the basis of a cause of action under 11 U.S.C. 523(a)(6). *Williams v. Electrical Workers IBEW Local 520*, 337 F.3d 504, 511 (5th Cir. 2003).  "In order to determine whether this has occurred, a court must look at the knowledge and intent of the debtor at the time of the breach."  *Moraine v. Nazarko (In re Nazarko)*, Nos. 05-40372, 05-4270, 2008 Bankr. LEXIS 262, at \*19 (Bankr. E.D. Tex. 2008).

Plaintiffs first argue that Defendants willfully and maliciously injured them by taking their money with the intent that Salcedo Homes, LLC would not finish construction of Plaintiffs' new home.[21]  Plaintiffs also allege Mr. Salcedo submitted draws on behalf of Salcedo Custom Homes, LLC knowing that the money requested would not be used to construct the Plaintiffs' home.[22]  Defendants dispute these allegations because Plaintiffs "plead no facts to demonstrate actual malice" and a "motive to profit personally does not rise to the level of malice without more."[23]

The summary judgment evidence submitted, read in the light most favorable to Defendants, is insufficient for a finding that the state court judgment debt was obtained through willful and malicious injury.  Section 523(a)(6) requires a showing that the *harm*

---

[21] Mot., ¶ 77, 26, ECF No. 41.

[22] *Id.*

[23] Resp., 11 ¶ 29, ECF No. 45.

-21-

caused by the "harmful act" was intentional, not just that the act itself was intentional. *In re Smith*, 659 B.R. 500, 510 (Bankr. E.D. Tex. 2024). At minimum, Plaintiffs' evidence does not support a finding of no genuine issue of material fact on this question of intent. Thus, trial on the merits is warranted.

### D. Arbitration

In their response to the Motion, Defendants ask this court to "enforce the Alternative Dispute Resolution clause of the Construction Contract."[24]  In their reply, Plaintiffs oppose this argument raised " . . . for the first time and without a motion . . ."[25]

By Defendants' own admission the alternative dispute resolution provision they seek to enforce was agreed to by the "parties" to the pertinent contract.[26]  That contract was entered into by and between "Salcedo Homes, LLC" and "Alex White, Deborah White, Carol White."[27]  While Alex White and Deborah White are parties to this proceeding, Salcedo Homes, LLC is not.  Defendants do not cite authority for the proposition that they, as an officer or member, have the right to enforce on their *personal* behalf an alleged *corporate* right to compel alternative dispute resolution.

Rather, it is this Court which should determine issues of bankruptcy

---

[24] Resp., 7 ¶ 17, ECF No. 45.

[25] Reply, 10 ¶ 25, ECF No. 46.

[26] Resp., 7 ¶ 18, ECF No. 45.

[27] Mot., Ex. 1-D, 14, ECF No. 41; Resp., 7-8 ¶ 18, ECF No. 45.

dischargeability in this proceeding.[28]  The Court declines to enforce on Plaintiffs the alternative dispute resolution as urged by Defendants.

## V.  Issues Precluded from Re-Litigation

For the previously mentioned reasons, Plaintiffs' requested judgment in their favor as a matter of law must be denied. Nevertheless, certain facts have been established.  The following facts are relevant to the issues before the Court and have been established in this proceeding under the guidelines of Local District Court Rule CV-56, as incorporated by Local Rule of Bankruptcy Procedure 7056(d).[29]

1.  Plaintiffs, Alex White and Deborah White, are a married couple who reside in Celina, Texas.

2.  Defendants, Brian Salcedo and Sarah Salcedo, are a married couple who reside in Plano, Texas.

---

[28] Though it was considering collateral estoppel principles at the time, the Supreme Court has nevertheless written that "[s]ince 1970, however, the issue of nondischargeability has been a matter of federal law governed by the terms of the Bankruptcy Code."  *Grogan v. Garner*, 498 U.S. 279, 284 (1991), citing *Brown v. Felsen*, 442 U.S. 127, 129-130 (1979).

[29] Local District Court Rule CV-56 directs a movant to include a Statement of Undisputed Material Facts and to support such a statement with "appropriate citations to proper summary judgment evidence." It directs a respondent that any response "should be supported by appropriate citations to proper summary judgment evidence." With regard to the disposition of the motion, the rule states:

(c) **Ruling**. In resolving the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the response filed in opposition to the motion, as supported by proper summary judgment evidence. The court will not scour the record in an attempt to unearth an undesignated genuine issue of material fact.

Thus, any failure by a respondent to controvert the material facts set forth in any of the motions or to support such a challenge by references to proper summary judgment evidence, results in the facts as claimed and supported by admissible evidence by the movant "admitted to exist without controversy." E.D. TEX. LOCAL R. CV–56(c).

3.      Defendants are both owners, managers, and officers of Salcedo Homes, LLC and Salcedo Custom Homes, LLC.

4.      Salcedo Homes, LLC and Salcedo Custom Homes, LLC are both closely-held Texas limited liability companies.

5.      Plaintiffs, along with Mr. White's mother, Carol White, entered into a "Fixed Price Residential Construction Contract" with Salcedo Homes, LLC in November, 2019, which contract was subsequently amended in January, 2020 (together the "Contract").

6.      Defendant, Brian Salcedo signed the Contract as "President" of Salcedo Homes, LLC.

7.      The Contract provides for Salcedo Homes, LLC as builder, to construct a single family residence at Lot 10, the Hills of Lonestar Addition, Collin County, Texas, for Plaintiffs and Carol White, in exchange for $788,000.00.

8.      Prior to the commencement of "Work" as defined in the Contract, Plaintiffs and Carol White were required to pay Salcedo Homes, LLC the sum of $25,000.00 "as a portion of the Total Contract Price (Initial Cash Payment)."

9.      The Contract contemplated that "Work" as defined in the Contract would commence fourteen (14) calendar days after the occurrence of certain conditions as set forth in the Contract.

10.     The Contract defined "Events of Default" by the "Builder" to include "Builder's failure, without cause, to make payments to any material supplier, laborer, or subcontractor for which Builder has received payment from Owners or Owner's Lender."

11.     Plaintiffs obtained a construction loan from First United Bank & Trust Company in the amount of $545,000.00 secured by a lien on the Property as set forth in a Residential Construction Loan Agreement ("Loan Agreement") dated April 16, 2020.

12.     Defendant Brian Salcedo signed the Loan Agreement as the "Manager" of Salcedo Custom Homes, LLC, not as a party to its terms but only in acknowledgment of its terms.

13.     Defendant Brian Salcedo signed on behalf of Salcedo Custom Homes, LLC as "Contractor" a "Mechanic's Lien Contract (With Transfer of Lien and with Power of Sale)" dated April 16, 2020

-24-

which was recorded on April 20, 2020 at Doc. No. 20200420000558700 in the Official Public Records of Collin County, Texas (the "Mechanic's Lien Contract")." Plaintiffs signed the Mechanic's Lien Contract as Owners. The Mechanic's Lien Contract refers on the first page to " . . . THE DEED OF TRUST EXECUTED CONCURRENTLY HEREWITH." It also defines "Construction" as "CONSTRUCTION OF THE IMPROVEMENTS LOCATED ON THE ABOVE-DESCRIBED REAL PROPERTY PURSUANT TO THE AGREEMENT BETWEEN THE PARTIES DATED APRIL 16, 2020." The "Consideration" was listed as "$788,000.00 AS EVIDENCE BY AFOREMENTIONED AGREEMENT BETWEEN PARTIES." The date for "Completion of Construction" was listed as April 29, 2021.

14.     Included in the "Contractor's Obligations" as set forth in the Mechanic's Lien Contract, is the following statement: "Contractor will pay all costs of Construction, including labor, materials, and subcontractors, and will furnish Owner receipts for and releases from these costs."

15.     Between the dates of June 29, 2020 through July 13, 2021, Salcedo Custom Homes, LLC was sent four invoices by CBG Surveying Texas, LLC. These were Invoice No. 2011409 on June 30, 2020 for $350.00, Invoice No. 2011409-01 on June 29, 2020 for $350.00, Invoice No. 2011409-02 on August 7, 2020 for $200.00, and Invoice No. 2011409-03 on July 13, 2020 for $200.00.[30]

16.     On November 15, 2021, Plaintiffs paid $1,200.00 to CBG Surveying Texas, LLC via check.[31]

17.     JP Silver Concrete, Inc., sent "Brian Salcedo Custom Homes" and/or "Salcedo Homes, LLC" Invoice No. 31962 dated September 18, 2020 for $44,904.44 and with a due date of September 25, 2020, for foundation and concrete work.

18.     On November 6, 2020, Plaintiffs and Mr. Salcedo were sent a "Residential Monthly Notice Letter to Owner and Original Contractor to Trap Funds" by JP Silver Concrete, Inc. under the provisions of Tex. Prop. Code § 53.001, et. seq., for the month of

---

[30] Mot., Ex. 1-AA,  ECF No. 41.

[31] Mot., Ex. 1-HH, 7, ECF No. 41.

September, 2020.  The total amount due listed was $44,904,44.

19.     On November 23, 2020, JP Silver Concrete Inc. executed an
        "Affidavit of Mechanic's Lien by Tiered Contractor or Supplier"
        concerning the Property in the amount of $44,904.44.[32]  This
        affidavit named Plaintiffs as the "Property Owner" and "Brian
        Salcedo" as both the "Prime Contractor" and the "Hiring Party."

20.     On July 8, 2021, JP Silver Concrete Inc. executed a "Notice of Intent
        to Foreclose and Enforce Lien" concerning the Property.  This notice
        indicates it was sent both to Plaintiffs and Brian Salcedo, and that JP
        Silver Concrete, Inc. intended to foreclose on the Property because it
        had not been paid $44,904.44.[33]

21.     On November 15, 2021, Plaintiffs paid $44,904.44 to JP Silver
        Concrete Inc. via check to prevent foreclosure of its lien on their
        Property.[34]

22.     On January 15, 2021, Deford's Lumber Company, Ltd. executed a
        "Mechanic's and Materialmen's Lien Affidavit" concerning the
        Property in the amount of $42,061.53.[35]  This affidavit named
        Plaintiffs as owners of the Property and "Salcedo Custom Homes" as
        the "Original Contractor."  This lien affidavit was recorded at Doc.
        No. 20210115000092270 on January 15, 2021, in the Official Public
        Records of Collin County, Texas.

23.     On September 30, 2021, Deford's Lumber Company, Ltd., sent
        "Salcedo Custom Homes" a statement in the amount of $42,061.53
        for invoices not less than 120 days due.  These invoices were in
        various amounts dated from October 1, 2020 through November 19,
        2020.

24.     On October 19, 2021, Plaintiffs were sent a "Demand For Payment
        and Notice of Intent to File Foreclosure Action" by Ziegler, Gardner,

---

[32] Mot., Ex. 1-U, 4, ECF No. 41.

[33] Mot., Ex. 1-U, 8, ECF No. 41.

[34] Mot., Ex. 1-U, 9, ECF No. 41.

[35] Mot., Ex. 1-W, 9, ECF No. 41.

and Bell on behalf of Deford's Lumber Company, Ltd.[36]  This letter demanded payment from them of $42,061.53, the amount owed for materials provided for use on the Property by "Salcedo Custom Homes."  This letter threatened enforcement of the lien of Deford's Lumber Company, Ltd. by foreclosure on the Property.[37]

25.    Plaintiffs paid $42,061.53 to Deford's Lumber Company, Ltd. by check dated November 15, 2021 to eliminate its lien.[38]

26.    On February 12, 2021, Ferguson Enterprises, Inc. notified Plaintiffs and Salcedo Custom Homes, LLC of the filing of an "Affidavit Claiming Mechanic's and Materialmen's Lien" filed against the Property in the amount of $1,949.39.[39]

27.    On May 21, 2021, Ferguson Enterprises, Ltd. released its lien against the Property because of receipt of payment from Plaintiffs.[40]

28.    According to Invoice No. 271064 dated March 1, 2021 and addressed to Brian J. Salcedo, Main Street Millwork, Inc. was owed $1,506.98.[41]

29.    On May 14, 2021, Main Street Lumber Company sent a "Demand for Payment" to "Brian Salcedo dba Salcedo Custom Homes" and "Christopher White and Deborah Montegaudio" concerning the Property in the amount of $1,531.61.[42]

30.    On  June 10, 2021, Main Street Lumber Company executed an "Affidavit Claiming Mechanic's and Materialmen's Lien" concerning the Property in the amount of $1,531.61.[43]  This affidavit

---

[36] Mot., Ex. 1-W, 7, ECF No. 41.

[37] *Id.*

[38] Mot., Ex. 1-W, 12, ECF No. 41.

[39] Mot., Ex. 1-X, 2, ECF No. 41.

[40] Mot., Ex. 1-X, 7, ECF No. 41.

[41] Mot., Ex. 1-Y, 6, ECF No. 41.

[42] Mot., Ex. 1-Y, 1, ECF No. 41.

[43] Mot., Ex. 1-Y, 3, ECF No. 41.

named "Alex Christopher White and Deborah Montegaudio White" as owners of the Property and "Salcedo Custom Homes, LLC" as the original contractor.  This lien affidavit was recorded at Doc. No. 20210614001191810 on June 14, 2021, in the Official Public Records of Collin County, Texas.

31.    Plaintiffs paid $1,562.98 to Main Street Millwork, Inc. by check dated November 15, 2021.[44]

32.    On July 15, 2021, The Law Offices of Paul Gomez as attorneys for M&M Framing, LLC, sent Plaintiff, Alex Christopher White, a letter demanding payment of an unpaid, past due balance in the amount of $4,500.00.[45]  This letter was copied to Salcedo Homes, LLC.

33.    Plaintiff, Alex Christopher White, was sent Invoice No. 11 dated August 8, 2021 in the amount of $15,000.00 by Duartes HVAC Services.[46]

34.    On October 1, 2021, Alex Christopher White paid $15,000.00 to Duartes HVAC Services.[47]

35.    Construction of the Property was not completed by Salcedo Homes, LLC, Salcedo Custom Homes, LLC, or either of the Defendants.

36.    Plaintiffs contracted with Motes Custom Homes, LLC on August 6, 2021 to complete construction of the Property.[48]  Their agreement was set forth in a "Construction Management Contract" dated August 6, 2021.  In this contract, Plaintiffs agreed to pay Motes Custom Homes, LLC a set amount of $50,000.00 for "construction management services."  The estimated budget to complete construction of the Property was $542,000.00.

37.    Plaintiffs thereafter commenced Cause No. 219-05526-2021, styled *Alex White and Deborah White v. Salcedo Custom Homes, LLC; Salcedo Homes LLC; and Brian Salcedo*, in the 219th Judicial

---

[44] Mot., Ex. 1-Y, 11, ECF No. 41.

[45] Mot., Ex. 1-Z, 1, ECF No. 41.

[46] Mot., Ex. 1-EE, 1, ECF No. 41.

[47] Mot., Ex. 1-EE, 2, ECF No. 41.

[48] Mot., Ex. 1-FF, ECF No 41.

District of Collin County, Texas (the "State Court Case").[49]

38.   On April 28, 2022, Plaintiffs obtained a default judgment in the State Court Case against Salcedo Custom Homes, LLC, Salcedo Homes LLC, and Brian Salcedo as set forth in a "Proposed Order Granting Plaintiffs' Motion for Default Judgement" (the "Default Judgment").[50]

39.   The Default Judgment stated that: "Defendants are each jointly and severally liable under the Texas Property Code Chapter 162 for their acts and omissions."

40.   The Default Judgment awarded damages including, but not limited to, the following:

a.   Misuse, misapplication, and misappropriation of trust funds in the amount of $377,566.41 under the Texas Property Code Chapter 162, which Defendants obtained through fraud and fraudulent inducement;

b.   The additional cost Plaintiff incurred in having to pay a new contractor to remove Defendants' deficient in defective work and build the house in the manner Defendants' promised in the amount of no less than $605,746.58;

d.   The additional cost of rent incurred ($2,400.00 per month) from July 2021 through the date of the Motion due to Defendants' failure to timely complete construction and the delay caused between Defendants' abandonment of construction and Plaintiffs' ability to secure a new contractor, a total of $21,000.00;

e.   Amounts already paid to subcontractors and materialmen to avoid the filing of and/or foreclosure of liens on the Plaintiffs' real property due to Defendants' nonpayment in breach of contract in the amounts of $106,678.34;

f.   $55,450.00 in additional claims alleged by unpaid subcontractors and materialmen work Defendants arranged be undertaken on Plaintiffs' real property;

---

[49] Mot., ¶ 38, 13, ECF No. 41.

[50] Mot., Ex. 12, ECF No. 41.

41.   On March 23, 2023, Defendants filed their voluntary petition for Chapter 7 bankruptcy.[51]

42.   On May 4, 2023, a section 341 meeting of creditors was held by Chapter 7 Trustee, Michelle Chow.[52]

43.   On June 16, 2023, Plaintiffs commenced this adversary proceeding against Defendants.[53]

44.   On July 5, 2023, an Order of Discharge was entered on Defendants' behalf.[54]

45.   Defendants timely answered in this adversary proceeding.[55]

46.   Plaintiffs filed their "Motion and Brief in Support of Summary Judgment" on May 15, 2024.[56]

47.   Defendants timely responded to the Motion.[57]

48.   Plaintiffs timely replied to Defendants' response.[58]

## VI. Conclusion

Based upon the Court's consideration of the pleadings, the proper summary judgment evidence submitted therewith, the relevant legal authorities, and for the reasons set forth herein, the Court concludes that the "Motion and Brief in Support of Summary

---

[51] Case No. 23-40496, ECF No. 1.

[52] Case No. 23-40496, ECF No. 18.

[53] Compl., ECF No. 1.

[54] Case No. 23-40496, ECF No. 41.

[55] Ans., ECF No. 18.

[56] Mot., ECF No. 41.

[57] Resp., ECF No. 45.

[58] Rep., ECF No. 46.

Judgment" filed by Plaintiffs Alex and Deborah White, is hereby **DENIED**.  Plaintiffs

failed to demonstrate they are entitled to judgment as a matter of law regarding the

dischargeability issues raised under 11 U.S.C. §§§  523(a)(2)(A), (a)(4), and (a)(6).

Therefore, these claims must be determined through a trial on the merits.

Numerous factual issues, however, have been established through summary

judgment evidence tendered to the Court.  Because the Court has not granted the relief

sought by Plaintiffs' Motion, it is appropriate to state the material facts that are not

genuinely in dispute pursuant to Fed. R. Civ. P. 56(g).  These established facts as set forth

in this Memorandum shall not be re-litigated at the trial for this adversary proceeding.  An

appropriate order consistent with this opinion shall be entered by the Court.

Signed on 9/9/2025

THE HONORABLE JOSHUA P. SEARCY
UNITED STATES BANKRUPTCY JUDGE

-31-